Justice Stevens,
dissenting.
As the Court explains, when Congress enacted a heightened pleading requirement for private actions to enforce the federal securities laws, it “left the key term ‘strong inference’ undefined.” Ante, at 314. It thus implicitly delegated significant lawmaking authority to the Judiciary in determining how that standard should operate in practice. Today the majority crafts a perfectly workable definition of the term, but I am persuaded that a different interpretation would be both easier to apply and more consistent with the statute.
The basic purpose of the heightened pleading requirement in the context of securities fraud litigation is to protect defendants from the costs of discovery and trial in unmeritori *336 ous cases. Because of its intrusive nature, discovery may also invade the privacy interests of the defendants and their executives. Like citizens suspected of having engaged in criminal activity, those defendants should not be required to produce their private effects unless there is probable cause to believe them guilty of misconduct. Admittedly, the probable-cause standard is not capable of precise measurement, but it is a concept that is familiar to judges. As a matter of normal English usage, its meaning is roughly the same as “strong inference.” Moreover, it is most unlikely that Congress intended us to adopt a standard that makes it more difficult to commence a civil case than a criminal case.[1]
In addition to the benefit of its grounding in an already familiar legal concept, using a probable-cause standard would avoid the unnecessary conclusion that “in determining whether the pleaded facts give rise to a ‘strong’ inference of scienter, the court must take into account plausible opposing inferences.” Ante, at 323 (emphasis added). There are times when an inference can easily be deemed strong without any need to weigh competing inferences. For example, if a known drug dealer exits a building immediately after a *337 confirmed drug transaction, carrying a suspicious looking package, a judge could draw a strong inference that the individual was involved in the aforementioned drug transaction without debating whether the suspect might have been leaving the building at that exact time for another unrelated reason.
If, using that same methodology, we assume (as we must, see ante, at 322, 326) the truth of the detailed factual allegations attributed to 27 different confidential informants described in the complaint, App. 91-93, and view those allegations collectively, I think it clear that they establish probable cause to believe that Tellabs’ chief executive officer “acted with the required intent,” as the Seventh Circuit held.[2] 437 P. 3d 588, 602 (2006).
Accordingly, I would affirm the judgment of the Court of Appeals.

 The meaning of a statute can only be determined on a case-by-case basis and will, in each case, turn differently on the clarity of the statutory language, its context, and the intent of its drafters. Here, in my judgment, a probable-cause standard is more faithful to the intent of Congress, as expressed in both the specific pleading requirement and the statute as a whole, than the more defendant-friendly interpretation that Justice Scalia prefers. He is clearly wrong in concluding that in divining the meaning of this term, we can merely “read the language for what it says,” and that it is susceptible to only one reading. Ante, at 331 (opinion concurring in judgment). He argues that we “must be content to give ‘strong inference’ its normal meaning,” ibid., and yet the “normal meaning” of a term such as “strong inference” is surely in the eye of the beholder. As the Court’s opinion points out, Courts of Appeals have divided on the meaning of the standard, see ante, at 314, 322, and today, the Members of this Court have done the same. Although Justice Scalia may disagree with the Court’s reading of the term, he should at least acknowledge that, in this case, the term itself is open to interpretation.

 The “channel stuffing” allegations in ¶¶ 62-72 of the amended complaint, App. 110-113, are particularly persuasive. Contrary to petitioners’ arguments that respondents’ allegations of channel stuffing “are too vague or ambiguous to contribute to a strong inference of scienter,” ante, at 325, this portion of the complaint clearly alleges that Notebaert himself had specific knowledge of Illegitimate channel stuffing during the relevant time period, see, e. g., App. Ill, ¶ 67 (“Defendant Notebaert worked directly with Tellabs’ sales personnel to channel stuff SBC”); id,., at 110-112 (alleging, in describing such channel stuffing, that Tellabs took “extraordinary” steps that amounted to “an abnormal practice in the industry”; that “distributors were upset and later returned the inventory” (and, in the case of Verizon’s chairman, called Tellabs to complain); that customers “did not want” products that Tellabs sent and that Tellabs employees wrote purchase orders for; that “returns were so heavy during January and February 2001 that Tellabs had to lease extra storage space to accommodate all the returns”; and that Tellabs “backdat[ed] sales” that actually took place in 2001. to appear as having occurred in 2000). If these allegations are actually taken as true and viewed in the collective, it is hard to imagine what competing inference could effectively counteract the inference that Notebaert and Tellabs "'acted with the required state of mind.'” Ante, at 329 (opinion of the Court) (quoting 15 U. S. C. §78u-4(b)(2)).